**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TIMOTHY R. KNIGHT,<br><br>Plaintiff,<br><br>v.<br><br>ENGILITY CORPORATION and<br>ENGILITY HOLDINGS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:17-cv-575<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Timothy R. Knight brings this action against Defendant Engility Corporation pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.*, and against Defendant Engility Holdings, Inc. for breach of contract. Plaintiff seeks an award reflecting all amounts owing to him, including lost wages, benefits, stock awards, front pay, future benefits and other items of past and future pecuniary or economic loss, liquidated damages, and all other relief available under federal and state law.

**PARTIES**

1. Plaintiff, Timothy R. Knight, is a resident of the Commonwealth of Virginia.

2. Plaintiff was born in May 1950 and is currently sixty-six (66) years old.

3. Defendant Engility Corporation is a corporation organized under Massachusetts law with its principal place of business located in Chantilly, Virginia. Engility Corporation is registered to do business in the District of Columbia and maintains a registered agent in the District of Columbia.

4. Defendant Engility Holdings, Inc. is a corporation organized under Delaware law with its principal place of business located in Chantilly, Virginia.

5. Defendant Engility Corporation is a wholly owned subsidiary of Defendant Engility Holdings, Inc.

6. Defendants are engaged in an industry affecting interstate commerce and regularly conduct business in and directed towards the District of Columbia and throughout the United States and the world.

7. At all times material to this action Defendant Engility Corporation was an employer within the meaning of the ADEA.

8. At all times material to this action, Defendants acted by and through authorized agents, servants, contractors and/or employees acting within the course and scope of their employment with Defendants or authorized by Defendants and in furtherance of Defendants' business.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over Plaintiff's claim against Defendant Engility Corporation pursuant to 28 U.S.C. § 1331 as Plaintiff's cause of action arises under the ADEA.

10. The Court has supplemental jurisdiction over Plaintiff's breach of contract claim against Engility Holdings, Inc. pursuant to 28 U.S.C. § 1367(a) because it is a claim that is so related to Plaintiff's claim under the ADEA that they form part of the same case or controversy under Article III of the United States Constitution.

11. Venue is proper in this District pursuant to 29 U.S.C. § 626(c)(1) and 28 U.S.C. §§ 1391(b)(1) and (c)(2) because Defendants are subject to this Court's personal jurisdiction in that they transacts business and are found in this District.

12. Defendants maintain an office in the District of Columbia, located at 1211 Connecticut Avenue, NW, Suite 700, Washington, DC.

13. Defendants are engaged in the continuous and systematic transaction and doing of business in the District of Columbia. Defendants regularly do and solicit business in the District of Columbia, including with various federal agencies and non-governmental organizations located in the District of Columbia. Defendants derive substantial revenue from services rendered to agencies and entities located in the District of Columbia.

14. On or about December 27, 2016, Plaintiff filed a charge of discrimination with the Washington Field Office of the Equal Employment Opportunity Commission ("EEOC").

15. Plaintiff amended his EEOC charge on January 17, 2017.

16. Sixty days have elapsed since Plaintiff filed his Charge with the EEOC.

17. The EEOC provided Plaintiff with a Notice of Right to Sue dated February 27, 2017.

18. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

**FACTS**

19. Mr. Knight was hired in or about 2000 to serve as the Vice President of the Relief and Reconstruction Division of International Resources Group, Ltd., at the time a wholly owned subsidiary of Defendant Engility Corporation.

20. In or about April 2015, Defendant Engility Corporation promoted Mr. Knight to the position of Senior Vice President, Account Executive International. In that position, Mr. Knight reported directly to the President and Chief Operating Officer, John P. Hynes, Jr.

21. Mr. Knight met all performance expectations and received good evaluations. Engility had not given Mr. Knight any negative reviews or evaluations and had not provided him notice of any performance or conduct issues whatsoever. Mr. Knight was never counseled about any issues or incidents and received nothing but positive feedback. Engility consistently praised his work, gave him positive evaluations, and told him that his performance met or exceeded expectations.

22. Engility promoted Mr. Knight on multiple occasions, consistently increased his salary, and consistently paid him performance bonuses.

23. One component of Mr. Knight's compensation consisted of awards of restricted stock under the Engility Holdings, Inc. Amended and Restated 2012 Long Term Performance Plan. Each year, Mr. Knight received one or more awards of restricted stock units or performance units or shares.

24. Each award was documented by an agreement between Defendant Engility Holdings, Inc. and Mr. Knight.

25. Under the Restricted Stock Unit Agreements, Defendant Engility Holdings, Inc. awarded Mr. Knight a specific number of restricted units which represented the right to receive one share of stock in Defendant Engility Holdings, Inc. upon the expiration of a specified restricted period ranging from one to three years.

26. Under the Performance Share Award Agreements (sometimes identified as Performance Unit Award Agreements), Defendant Engility Holdings, Inc. identified a number of Target Shares and a two-year Performance Period. Upon the conclusion of the Performance

Period, Mr. Knight was to receive anywhere from 0% to 200% of the Target Shares based upon the company's financial performance during the Performance Period.

27. One such Performance Share Award Agreement was dated March 7, 2014, identifying a Target Shares figure of 2,675 and providing for a Performance Period running from January 1, 2014 to December 31, 2016. A true and correct copy of the Engility Holdings, Inc. Amended and Restated 2012 Long Term Performance Plan Performance Share Award Agreement ("PSA Agreement") is attached hereto as Exhibit A.

28. Section 6(a) of the PSA Agreement provides that "[u]pon the occurrence of a Change in Control" and if "the entity surviving the Change in Control (the 'Successor') assumes the Award granted hereby," then "in the event the Participant's employment with the Successor is terminated without Cause by the Successor … prior to the expiration of the Restricted Period, the number of Performance Shares otherwise eligible to vest pursuant to this paragraph shall immediately vest and be released to the Participant upon the Participant's termination of employment."

29. In a transaction announced publicly on February 26, 2015, Defendant Engility Holdings, Inc. acquired TASC, Inc. in an all-stock transaction valued at approximately $1.3 billion. This transaction was a "Change in Control" within the meaning of the PSA Agreement and the Engility Holdings, Inc. Amended and Restated 2012 Long Term Performance Plan.

30. Accordingly, if Mr. Knight was terminated "without Cause" after February 2015 and before the expiration of the Restricted Period under the PSA Agreement, which was March 7, 2017, the shares promised him under the PSA Agreement were to immediately vest and be released to Mr. Knight.

31. Section 1(a) of the PSA Agreement defines "Cause" as follows:

> "Cause" means the Participant's: (i) intentional failure to perform reasonably assigned duties, which failure the Participant does not cure within fifteen days of the Corporation providing written notice of such failure; (ii) personal dishonesty or willful misconduct in the performance of duties; (iii) breach of fiduciary duties to the Corporation involving personal profit; (iv) willful violation of any law, rule or regulation in connection with the performance of duties (other than traffic violations or similar offenses); or (iv) any act by a Participant involving fraud, any breach by Participant of applicable regulations of competent authorities in relation to trading or dealing with stocks, securities, investments and the like or any willful or grossly negligent act by the Participant resulting in an investigation by the Securities and Exchange Commission, which, in the case of (iv) above, the Board reasonably determines materially adversely affects the Corporation or the Participant's ability to perform his or her duties to the Corporation. For purposes of this definition, an act, or failure to act, on Participant's part shall be deemed "willful" if done, or omitted to be done, by the Participant in bad faith and without reasonable belief that the action or omission was in the best interest of the Corporation. For purposes of this definition, "Corporation" includes any applicable Subsidiary, Successor and any Subsidiary of a Successor.

32. Abruptly and without any advance warning, on the morning of September 19, 2016, Mr. Hynes (Engility's President and COO) and Susan Balaguer (an Engility Senior Vice President and its Chief Human Resources Officer) informed Mr. Knight that his employment was terminated.

33. Mr. Hynes and Ms. Balaguer stated that Mr. Knight's employment was being terminated for four reasons: (1) "conflict of interest"; (2) "harassment"; (3) "retaliation"; and (4) "failure to perform duties."

34. The reasons for Mr. Knight's termination stated by Mr. Hynes and Ms. Balaguer were pretextual.

35. Defendants provided Mr. Knight with no specific details about the purported reasons supporting the termination decision.

36. Defendants did not give Mr. Knight any opportunity to respond to or show improvement regarding any alleged issues or concerns.

37. Mr. Knight specifically asked Mr. Hynes and Ms. Balaguer to explain what their four stated reasons referred or related to. Mr. Hynes and Ms. Balaguer refused to provide any details or any explanation and declared that they had "no legal obligation to do so."

38. At the time of his termination, Mr. Knight was the oldest of Engility's senior management employees. Specifically, he was the oldest of ten Senior Vice Presidents.

39. Engility selected a significantly and substantially younger individual, Anthony Latta, who was 36 years old at the time, to fill Mr. Knight's position.

40. Shortly after Mr. Knight's termination, Defendant also terminated two other Senior Vice Presidents who also are members of the class of individuals protected by the ADEA.

41. Mr. Knight's age (then 66) was a motivating and determining factor in his termination.

42. The foregoing conduct was willful within the meaning of the ADEA.

**FIRST CAUSE OF ACTION**
**ADEA**

43. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

44. At the time of his termination, Plaintiff was 66 years old and a member of the statutorily-protected age group.

45. Plaintiff suffered an adverse employment action, specifically the termination of his employment by Defendant Engility Corporation.

46. Defendant Engility Corporation selected a significantly and substantially younger

person, a 36-year-old, to fill Mr. Knight's position.

47. Defendant Engility Corporation terminated Plaintiff's employment because of his age in violation of the ADEA.

48. Defendant Engility Corporation acted knowingly, wantonly, willfully and in reckless disregard of Plaintiff's rights, warranting the imposition of liquidated damages.

49. As a direct and proximate result of Defendant Engility Corporation's violation of the ADEA, Plaintiff has sustained injuries, damages and losses including lost wages, lost benefits, lost stock awards and other items of pecuniary or economic loss, past and future.

50. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant Engility Corporation's discriminatory and unlawful acts unless and until the Court grants the relief requested herein.

**SECOND CAUSE OF ACTION**
**Breach of Contract**

51. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

52. On or about March 7, 2014, Engility Holdings, Inc. and Plaintiff entered into the PSA Agreement.

53. The PSA Agreement is a valid and enforceable contract.

54. Following the TASC, Inc. transaction in February 2015, under the PSA Agreement if Plaintiff was terminated "without Cause" before the expiration of the Restricted Period on March 7, 2017, Plaintiff's shares under the PSA Agreement were to immediately vest and be released to Plaintiff.

55. Engility terminated Plaintiff's employment "without Cause" within the meaning of the PSA Agreement.

56. Defendant Engility Holdings, Inc. breached the PSA Agreement when it failed to cause Plaintiff's shares thereunder to immediately vest and be released to Plaintiff upon his termination on September 19, 2016.

57. Plaintiff has suffered damages as a result of Defendant Engility Holdings, Inc.'s breach of contract, specifically the denial of shares of stock to which he was entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff, Timothy R. Knight, and against Defendants, Engility Corporation and Engility Holdings, Inc., as follows:

(a) Declaring the acts and practices complained of herein to be a violation of the ADEA;

(b) Enjoining and restraining permanently the violations alleged herein;

(c) Awarding damages to Plaintiff for his past and future economic losses;

(d) Awarding Plaintiff liquidated damages pursuant to 29 U.S.C. § 626(b);

(e) Awarding Plaintiff compensatory damages for breach of contract reflecting the value of the stock which Defendant Engility Holdings, Inc. failed to cause to vest immediately upon Mr. Knight's termination on September 19, 2016;

(f) Awarding Plaintiff the costs of this action, together with reasonable attorneys' fees pursuant to 29 U.S.C. §§ 216 and 626(b);

(g) Awarding Plaintiff such other damages as are appropriate under the ADEA, federal and state law;

(h) Awarding Plaintiff pre- and post-judgment interest on all amounts awarded; and

(i) Granting such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Dated: March 29, 2017

/s/Daniel Marino
Daniel Marino (DC Bar No. 416711)
Tillman J. Finley (DC Bar No. 477737)
MARINO FINLEY PLLC
1100 New York Avenue, N.W.
Suite 700W
Washington, DC 20005
Tel: 202.223.8888

*Attorneys for Plaintiff Timothy R. Knight*